IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JAMIE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-CV-05048-NKL |
| ) | |
| AS AMERICA, INC., d/b/a AMERICAN ) | |
| STANDARD BRANDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Pending before the Court is the parties' briefing on how this Court's original order, [Doc. 144], should be revised in light of the Eighth Circuit's judgment on the parties' appeal. [Doc. 179].

**I.  Background**

On January 9, 2015, the Court entered its findings of fact and conclusions of law regarding Plaintiff Jamie Smith's Family and Medical Leave Act ("FMLA") claim. [Doc. 144]. The Court concluded based on the evidence presented at trial that Defendant American Standard violated the FMLA when it terminated Mr. Thomas Smith's employment, and that Mr. Smith's wife, Plaintiff Jamie Smith, was entitled to damages from February 8, 2011 through July 20, 2011. In total, Plaintiff recovered $27,731.68, plus statutory interest.

1

Defendant appealed the Court's decision regarding liability, liquidated damages, and attorneys' fees. [Docs. 146, 171, 176]. Plaintiff cross-appealed the Court's application of the after-acquired evidence doctrine to limit her damages. [Doc. 168]. The Eighth Circuit affirmed the Court's order as to liability, liquidated damages, and attorneys' fees. [Doc. 179, p. 3]. However, the Eighth Circuit reversed and remanded for a new calculation of damages based on the Court's erroneous finding at trial that Mr. Smith was released from jail on July 20, 2011 rather than July 19, 2011. [Doc. 179, p. 15].

At a conference following the Eighth Circuit's opinion, both parties indicated to the Court that additional evidence would not be needed beyond what was presented at trial and in post-trial briefing. [Doc. 180]. The parties requested an opportunity to brief how the Eighth Circuit's decision affects the Court's original decision. [Doc. 180]. Accordingly, following the issuance of the mandate, the Court invited briefing on how its original order should be revised in light of the Eighth Circuit's judgment. [Doc. 182]. The parties have since filed and responded to this briefing, as well as provided post-remand proposed findings of fact. [Docs. 183, 184, 185, 186].

## II.   Discussion

In its post-appeal briefing on how the Court should revise its judgment, Defendant argues three separate dates at which Plaintiff's damages should be cut off: December 31, 2012 for Mr. Smith's failure to mitigate by no longer applying to new jobs; April 23, 2013 under the after-acquired evidence doctrine when Defendant discovered Mr. Smith

2

allegedly lied on his employment application; or March 3, 2014 upon Mr. Smith's death. In response, Plaintiff agrees only that her lost pay damages end at the time of Mr. Smith's death on March 3, 2014. Plaintiff also argues she is entitled to the $26,000 value of the life insurance policy that would have been in place had Mr. Smith been employed by Defendant at the time of his death. In addition, Plaintiff contends that she is entitled to additional attorneys' fees for services before appeal and following remand, as well as for expenses that were not recoverable in the Court of Appeals. [Doc. 183, p. 5].

### A. Failure to Mitigate

Defendant argues that Mr. Smith's lost pay damages should be cut off after December 31, 2012 because after this time, Mr. Smith stopped submitting job applications. Plaintiff responds that Defendant failed to carry its burden of proving that Mr. Smith failed to mitigate his damages prior to his death.

A "wrongfully discharged employee must take reasonable measures to mitigate damages." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1465 (8th Cir. 1994); *see also, Kehoe v. Anheuser-Busch, Inc.*, 96 F.3d 1095, 1106 (8th Cir. 1996) ("It is axiomatic that . . . 'plaintiffs use reasonable efforts to obtain other employment after termination.'") (quoting *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 621 (5th Cir. 1996)). This mitigation duty likewise applies to an employee who is terminated in violation of the FMLA. *See Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 808 (8th Cir. 2013) (affirming the district court's application of the mitigation duty to a trucking employee who was wrongfully terminated in violation of the FMLA). "[W]hile the wrongfully discharged employee must take reasonable measures to mitigate damages, the defendant-

employer bears the burden of proving that the employee failed to take those measures." *Smith*, 38 F.3d at 1465.

This Court already made the following findings of fact, which are relevant to the mitigation of damages defense:

> Following his termination [in February 2011], Mr. Smith began looking for jobs, submitting approximately three to four applications per week. Mr. Smith was arrested for domestic assault on July 13, 2011, and spent some time in jail. Mr. Smith stopped applying for jobs in late 2012 and submitted no employment applications in 2013 because he was earning enough money "junking" and "salvaging" to pay his bills. [Doc. 144, p. 6].

Defendant contends that Mr. Smith could have minimized his damages by finding comparable employment after his termination and thus, his failure to continue applying for new work after 2012 constitutes a failure to mitigate.

The Eighth Circuit is clear that "[t]he defendant bears the burden of showing that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them." *Denesha v. Farmers Ins. Exchange*, 161 F.3d 491, 502 (8th Cir. 1998). Thus, to prove this affirmative defense, the defendant must "show that the plaintiff failed to use reasonable care and diligence *and* that there were jobs available which the plaintiff could have discovered and for which the plaintiff was qualified." *Doyne v. Union Electric Co.*, 953 F.2d 447, 451 (8th Cir. 1992) (emphasis added).

The purpose of the failure to mitigate defense is to allow the employer to cut short its liability if the wronged employee could have gotten a comparable job and elected not to. Under these circumstances the employer should not have to support the ex-employee.

4

Logically, then, the defendant must carry the burden of proving its right to this defense. *See Denesha*, 161 F.3d at 502.

In this case, Plaintiff offered evidence that Mr. Smith applied for three to four jobs per week over nearly a two year period while also working odd jobs in construction. Even after not getting better jobs that he consistently applied for, Plaintiff continued to work at jobs he could find. Meanwhile, Defendant did not offer any evidence that there were suitable positions available to Mr. Smith either before or after 2012. For these reasons, Defendant did not carry its burden and is not entitled to cut off its liability to Mr. Smith.

Defendant, however, argues that because Mr. Smith stopped applying to jobs in late 2012, Defendant is not required to put forth evidence that suitable jobs existed. As support, Defendant cites authority from other circuits that have adopted an exception to a defendant's usual burden of proof to show the availability of comparable jobs *See e.g., Wagner v. Dillard Dept. Stores, Inc.*, 17 Fed.Appx. 141, 154 (4th Cir. 2001) ("Although an employer ordinarily must come forward with evidence that comparable work is available, that is not the case if the plaintiff makes little or no effort to seek employment"); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (applying the rule that an employer "is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment"); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999) (recognizing the exception "reliev[ing] the defendant-employer of the burden to prove the availability of substantially equivalent jobs . . . once it has been shown that the former

5

employee made no effort to secure suitable employment"); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991) ("If . . . an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment") (superseded by statute on other grounds); *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990) (same).

How this Court should address this issue is a matter of first impression in the Eighth Circuit. As already discussed, the Eighth Circuit expressly requires a defendant to prove both that the plaintiff's mitigation efforts were unreasonable *and* that comparable jobs were available to the plaintiff, *see, e.g., Doyne v. Union Electric co.*, 953 F.2d 447, 451 (8th Cir. 1992), and it has not identified any exception to its rule. Furthermore, even if the Eighth Circuit were to adopt an exception to its rule when a plaintiff makes little effort to seek employment, Defendant has not shown that Mr. Smith made no reasonable efforts to obtain comparable work. *See, e.g., Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (applying the rule that an employer "is released from the duty to establish the availability of comparable employment *if it can prove that the employee made no reasonable efforts to seek such employment*") (emphasis added).

Reasonably, Mr. Smith began working occasional construction jobs while simultaneously applying to three to four jobs every week for almost two years. Mr. Smith's construction work included "roofing, replacing floors in homes, bathrooms, remodeling bathrooms, stuff like that, painting." [Doc. 184, p. 3]. Although Mr. Smith admitted that he stopped applying for jobs in late December 2012 that were comparable

6

to his factory job, the evidence shows that he still continued to work and presumably, search for and apply to, construction-related jobs—the only jobs that he had successfully obtained over this two year period. Mr. Smith's pay from working these jobs totaled $2,693 during the year of 2011; $1,195 during the year of 2012; and $3,285 during the year of 2013,[1] all of which Defendant is entitled to deduct from Plaintiff's recovery. [Doc. 183, p. 4]. He was not idle.

Defendant points to Mr. Smith's testimony that he stopped looking for comparable jobs in late 2012 "[b]ecause I've been working enough to where it's paying my bills. It's not full-time, I don't have the insurance and stuff I had before, but I am making enough to get by." [Doc. 184-2, p. 5]. Defendant suggests that Mr. Smith had removed himself from the job market. The Court disagrees. Mr. Smith did not state that he was unwilling to apply to future employment opportunities. After two years and hundreds of unsuccessful applications, it is understandable why Mr. Smith stopped going through the motions of submitting applications for comparable employment. Mr. Smith did not "remove himself from the labor market," as Defendant contends. Instead, he continued searching for and working the only jobs that he had successfully obtained over this two year time period—the construction work.

Considering his two year, unsuccessful search and his continued effort to find some work, Mr. Smith reasonably took the best employment opportunity available to him, according to the record before the Court  Mr. Smith was a felon with a criminal

---

[1] Because the parties cite the same replacement income amounts in their briefing, the Court accepts them as true.

record, a characteristic posing a significant obstacle to finding employment; he was GED-educated and living in a rural area; and his skill set appears to have been restricted to construction work and the other manual labor-related skills he used in his previous job with Defendant. Together, these facts suggest that Mr. Smith's job prospects were limited, at best. It is not surprising that he could not find comparable employment despite submitting hundreds of job applications in 2011 and 2012, and his decision to stop applying for comparable jobs after this time period while continuing to work construction was not unreasonable. To find otherwise would require someone to apply mechanically for jobs that he could not reasonably get, while excusing the employer's failure to show that there were comparable jobs available.

The duty to mitigate does not require Mr. Smith's efforts to have been successful. *See, e.g., Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) ("A plaintiff's efforts to mitigate need not be successful but must represent an honest effort to find substantially equivalent work."). Rather, Mr. Smith's duty—arising out of an affirmative defense for which Defendant carries the burden—is limited to "reasonable diligence," which the Court finds that Mr. Smith satisfied under these circumstances. At a minimum, this evidence shifts the burden to Defendant to show the availability of comparable positions for which Mr. Smith was eligible and did not apply. Defendant, however, did not proffer any such evidence.

### B. After-Acquired Evidence

Defendant next contends that the after acquired evidence doctrine limits Plaintiff's recovery. Under this doctrine, if an employer discovers evidence of wrongdoing on the

part of the employee that would have resulted in a legitimate discharge, the employee's award for back-pay may be limited to the period between the unlawful termination and the employer's discovery of this evidence. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995). On this issue, "the employer bears a 'substantial burden' and must show that such a firing would have taken place as a matter of 'settled' company policy." *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393, 408 (D. Minn. 1996) (quoting *Welch v. Liberty Mach. Works, Inc.*, 23 F.3d 1403, 1406 (8th Cir. 1994), *abrogated on other grounds by McKennon*, 513 U.S. at 362-63). "The court must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals, for things are often observed in the breach but not in the keeping." *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004).

Defendant contends that Mr. Smith "lied on his employment application" by failing to list three of his five convictions. [Doc. 184, p. 6-7]. In the section of his job application that asked about criminal convictions, Mr. Smith wrote:

> Oct. 1992 burglary stealing etc.
> Feb. 2002 felony in poss. of firearm
> (Would like to explain during interview).

[Doc. 184-4, p. 1]. Mr. Smith also disclosed on his application that he had been in prison from February 2002 through March 2007. [Doc. 184-4, p. 2].

Defendant characterizes Mr. Smith's application as "falsified" and contends that it would have terminated Mr. Smith upon discovering in April 2013, during discovery, that Mr. Smith neglected to list three additional stealing and burglary convictions. The Court, however, is unconvinced that Mr. Smith's application was falsified. Mr. Smith

9

explained why he had not listed the missing convictions, stating, "[T]hat's what the ETC is . . . What I was trying to do was condense because the paperwork . . ." [Doc.184-2, p. 8]. Moreover, common sense suggests that when one writes several items in list form followed with "etc.," the list is not complete. Mr. Smith's wording on his application does not indicate that he hid or omitted several of his convictions, but rather, that he was signaling to his potential employer that there were more convictions than those listed and that he wanted an opportunity to explain them in his interview.

Still, even if Mr. Smith's application was arguably "falsified," Defendant failed to carry its burden of proof in asserting this after-acquired evidence defense. In order to successfully utilize this doctrine, the employer must "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone." *McKennon*, 513 U.S. at 362-63. In his application, Mr. Smith disclosed not just one conviction but three convictions on two separate occasions followed by "etc." and a request to explain these convictions in his interview. Mr. Smith additionally disclosed to Defendant that he was in prison for a five year period. If Mr. Smith's disclosed convictions and his admitted extensive prison time did not dissuade Defendant from hiring Mr. Smith at the time he applied, it is difficult to believe that Defendant would have terminated Mr. Smith upon discovering that he had arguably misrepresented his criminal history in his application. This argument is particularly unpersuasive in light of the extent of the alleged misrepresentation, which was limited to Mr. Smith's omission of a few similar convictions from his employment application, although he put the employer on notice by using the abbreviation, etc. In addition, Defendant does not point to any

evidence showing that Defendant's actual employment practice was to terminate employees upon discovering incomplete information in their employment applications, when the Defendant was on notice that the applicant wanted to discuss the subject matter that was arguably incomplete. *See, e.g., Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004) ("The court must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals, for things are often observed in the breach but not in the keeping."). Defendant has not carried its substantial burden of showing that Mr. Smith would have been terminated as a matter of settled company policy.

For the previous reasons, Plaintiff's recovery is not limited by the after-acquired evidence doctrine.

### C. Life Insurance Policy

The parties agree that Plaintiff's recovery must be cut off as of March 2, 2014 because of Mr. Smith's death on March 3, 2014.[2] Plaintiff, however, contends that she is also entitled to the $26,000 employer-sponsored life insurance policy that Mr. Smith's estate would have received had Mr. Smith been employed at the time of his death.[3]

The FMLA entitles a successful plaintiff to damages equal to the amount of "any wages, salary, *employment benefits*, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I) (emphasis added).

---

[2] Plaintiff concedes March 2, 2014 to be the appropriate damages cut-off date. [*See* Docs. 186, p. 6 and 188].

[3] The parties stipulated that, had Mr. Smith been employed at the time of his death, his estate would have received the proceeds of his employer-sponsored life insurance policy, $26,000.

11

A claim for lost fringe benefits, including a life insurance policy, survives the death of an employee. *Foster v. Excelsior Springs City Hosp. & Convalescent Center*, 631 F.Supp. 174, 175 (W.D. Mo. 1986) (citing *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 964 (4th Cir. 1985) and *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 279 n. 2 (8th Cir.1983)). However, there is a split of authority on the proper measure of value of the life insurance. *Id.*

Defendant argues that Plaintiff cannot recover the $26,000 value of the policy, citing to *Fariss v. Lynchburg Foundry*. 769 F.2d 958 (4th Cir. 1985). In *Fariss*, the Fourth Circuit held that a plaintiff could recover only the value of the life insurance *premiums* paid not the actual *proceeds* from the life insurance policy. *Id.* at 965. The *Fariss* court reasoned that Congress did not intend "to transform employers into insurers merely because an insurance policy is part of the compensation for employment." *Id.* Citing the employee's duty to mitigate, the court found that, "in most cases, the employee can easily avoid the risk of being uninsured by purchasing an individual policy of comparable value . . . [which] would permit full recovery of any additional premiums for the comparable individual policy beyond what the employer would have paid." *Id.* at 965-66. Accordingly, because there was no evidence that the employee had attempted to obtain any substitute coverage, the court held that the plaintiff could "recover only the premiums the employer would have paid." *Id.* at 966.

Plaintiff, however, contends that she is entitled to the face value of the policy and cites to *Lubke v. City of Arlington*. 455 F.3d 489 (5th Cir. 2006). In *Lubke*, the Fifth Circuit held:

> [T]he correct measure of damages for lost insurance benefits in FMLA cases is either actual replacement cost for the insurance, or expenses actually incurred that would have been covered under a former insurance plan. The lost 'value' of benefits, absent actual costs to the plaintiff, is *not* recoverable.

*Id.* at 499 (emphasis added). Because *Lubke* precludes the recovery of the lost value of insurance, this case does not support Plaintiff's claim for the $26,000 value of Mr. Smith's life insurance policy.

Plaintiff also cites *Foster v. Excelsior Springs City Hospital* to support her claim. 631 F.Supp. 174 (W.D. Mo. 1986). In *Foster*, the Western District of Missouri considered a widowed plaintiff's ADEA claim for the $60,000 value of her deceased husband's life insurance policy. *Id.* During employment, the defendant employer had paid life insurance premiums for the widow's husband, Guy. *Id.* After his employer wrongfully terminated him in violation of the ADEA, Guy never procured a new policy and died without life insurance. *Id.* The widow plaintiff submitted a life insurance agent's affidavit, which stated that an individual with Guy's heart attack and health history was generally uninsurable. *Id.* at 175. In light of this evidence, the *Foster* court awarded the plaintiff the $60,000 value of the life insurance policy. *Id.* Citing *Fariss*, the *Foster* court reasoned that the evidence showed Guy qualified for an exception to the general rule that he must mitigate his damages and that in his case, it was the proceeds, not the premiums, that would make him whole. *Id.*

The Court finds *Foster* unpersuasive given its citation to *Fariss*, which seems contrary to the result in *Foster*. More importantly, Plaintiff has not presented evidence

13

that Mr. Smith was unable to buy substitute life insurance, as in *Foster*—the only case cited by Plaintiff that awarded the face value of the life insurance policy as damages. Finally, even if Plaintiff is entitled to the value of the life insurance premiums, she did not provide any evidence of their cost, either during the course of trial or during the parties' additional briefing on damages. Therefore, regardless of whether Plaintiff is entitled to recover the value of these life insurance premiums, the record is insufficient to establish the amount of these damages.

### D. Revised Damages

As a result of Defendant's violation of the FMLA, Plaintiff is entitled to recover "any wages, salary, employee benefits, or other compensation denied or lost to such employee by reason of the violation," along with "the interest on the amount . . . calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(A)(i). "Other compensation" has been interpreted to include overtime pay, which is often awarded in connection with violations of employment laws. *See Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, at *11-12 (1st Cir. 2012) (citing numerous cases awarding employees overtime when employers violated federal employment laws).

Plaintiff is entitled to damages from the date of Mr. Smith's termination on February 8, 2011 through March 2, 2014, the day before Mr. Smith's death. The Court calculates these revised damages in light of the clarification provided by the parties during a conference on December 12, 2016. [*See* transcript for Doc. 188]. At this conference and in briefing, the parties conceded that assuming a damages cut-off date of March 2, 2014, Plaintiff is entitled to 159.0 weeks of damages at $15.35 per hour.

14

Case 3:12-cv-05048-NKL   Document 193   Filed 12/30/16   Page 14 of 17

However, Defendant later argued that the number of weeks of damages must be reduced by one week to account for Mr. Smith's incarceration from July 13, 2011 to July 19, 2011. [Doc. 189]. Although Plaintiff contested this week reduction of damages, the record shows Mr. Smith would not have earned income during his week of incarceration. Therefore, Plaintiff is entitled to 158.0 weeks of damages. The Court finds Mr. Smith would have worked an average of $35.79^4$ hours per week at $15.35 per hour. This entitles Plaintiff to $86,801.49 in base wages for the 158-week damages period.

During Mr. Smith's last year of employment with Defendant, he worked an average of 1.74 hours per week in overtime at one-and-a-half times his normal hourly pay. Therefore, Plaintiff is entitled to $6,330 in lost overtime pay.$^5$ Between February 8, 2011 and March 2, 2014, Mr. Smith would have worked twenty-four holidays.$^6$ [Doc. 183, p. 4]. Employees in Mr. Smith's job classification were paid triple time for working on designated holidays, which entitles Plaintiff to $5,894 in lost holiday pay. Mr. Smith

---

[4] Defendant's pay calculation of $549.33 per week divided by $15.35 per hour equates to an average of 35.79 hours per week. [*See* Doc. 188 transcript and Doc. 184-5]. Plaintiff argued for using a standard 40-hour work week instead. However, the Court finds the evidence of the actual number of hours per week Mr. Smith worked in his last year of employment to be more persuasive. [Doc. 184-5].

[5] Plaintiff calculated overtime as 1.74 hours per week multiplied by 159 weeks multiplied by one-and-a-half times Mr. Smith's hourly rate of $15.35. Defendant did not contest this calculation. [*See* Doc. 188 transcript]. Accordingly, the Court recalculated Mr. Smith's overtime using this same calculation but for 158 weeks.

[6] Defendant did not address holidays in its briefing nor contest Plaintiff's proposed finding that Mr. Smith would have worked twenty-four holidays. Therefore, the Court relies on Plaintiff's proposed finding to determine that Mr. Smith would have been entitled to holiday pay for twenty-four holidays. Holiday pay was calculated as $15.35/hour x 2.0 x 8 hours per day x 24 holidays. [Doc. 183, p. 4].

earned replacement earnings of $2,693 in 2011; $1,195 in 2012; and $3,285 in 2013 for a total of $7,173. For the previous reasons, Plaintiff is entitled to actual damages in the amount of $91,852.49.[7] Plaintiff is also entitled to liquidated damages in an equal amount.

Plaintiff again requests prejudgment interest without opposition from Defendant. Therefore, Plaintiff is entitled to an award of prejudgment interest in the amount of $1,571.[8] 29 U.S.C. § 2617(a)(1)(A)(ii).

### E. Additional Fees Requested

Plaintiff's Proposed Findings also include a finding that Plaintiff is entitled to additional fees incurred in this Court "before appeal and following remand" as well as "expenses that were not recoverable in the Court of Appeals." [Doc. 183, p. 5]. Defendant responds that Plaintiff has not identified nor provided the amounts of these additional fees. Without any authority to support Plaintiff's request or evidence of the specific amounts she is entitled to, the Court is unable to award these additional fees.

---

[7] This amount was calculated by adding $86,801.49 in base wages plus $6,330 in lost overtime wages plus $5,894 in lost holiday wages. Subtracted from this amount were Mr. Smith's replacement earnings of $7,173.

[8] Because Defendant did not object to Plaintiff's prejudgment interest calculations, the Court relied on Plaintiff's calculations and chart presented in Doc. 183-1. [*See also* Doc. 188 transcript]. Based on this chart and Plaintiff's proposed findings, Plaintiff is due $754.00 in prejudgment interest through October 2016. [*See* Doc. 183, p. 5]. In addition, Plaintiff represents that prejudgment interest on the actual and liquidated damage awards accrues at a rate of $15.75 per month for each month from November 2016 through the date of judgment. *Id.* Therefore, the December 2016 date of judgment entitles Plaintiff to an additional $31.50 in prejudgment interest. She is due an amount in liquidated damages equal to her actual damages, taking into account the Court's previous rulings. 29 U.S.C. § 2617(a)(1)(A)(iii).

16

Therefore, Plaintiff has 30 days from the date of this Order to file her motion for any additional attorneys' fees and expenses.

## III.    Conclusion

For the reasons set forth above, the Court awards Plaintiff damages in the revised amounts of $183,704.98 in damages and $1,571.00 in prejudgment interest.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 30, 2016
Jefferson City, Missouri